Timothy J. MASTERSON, Sr., and Timothy J. Masterson, Jr., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 3548.

United States District Court
D. Delaware.

Dec. 3, 1968.

B. Wilson Redfearn and Morton Richard Kimmel, Wilmington, Del., for plaintiff.

Alexander Greenfeld, U. S. Atty., and L. Vincent Ramunno, Asst. U. S. Atty., Wilmington, Del., for United States.

## OPINION

STEEL, District Judge.

On September 12, 1966, the Government filed an information alleging in Count I that the defendants—father and son—who were then and there engaged in the business of accepting wagers, had willfully failed to register with and furnish information to the District Director of Internal Revenue for the fiscal year ended June 30, 1965, as required by Title 26 U.S.C. § 4412, in violation of Title 26 U.S.C. § 7203. After pleading not guilty on September 12, 1966, defendants changed their plea to guilty on December 6, 1966.

On June 2, 1967, the Court suspended the imposition of sentence and placed each defendant on probation for a period of two years. At the same time, Counts II through VI were dismissed upon application of the Government, and are of no present concern.

On January 29, 1968, the Supreme Court held that a proper assertion of the privilege against self-incrimination would be a complete defense to the violation of 26 U.S.C. § 4412 for which the defendants in the case at bar were convicted. Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). In *Marchetti*, the defendant had properly asserted the privilege by moving to arrest the entry of judgment following the verdict.

On the same date the Supreme Court in Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) set aside the conviction of a defendant for willfully failing to pay the wagering oc-

cupational tax required by 26 U.S.C. § 4411.[1] Neither in the lower courts nor before the Supreme Court, had Grosso claimed the Fifth Amendment privilege against self-incrimination.

When the *Grosso* case was tried the current state of the law was that stated in United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953), and in Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955). *Kahriger* had held that compliance with the tax provisions imposed by 26 U.S.C. (Supp. V) § 3285, the forerunner of 26 U.S.C. § 4401, and the registration required by 26 U.S.C. (Supp. V) § 3291, the forerunner of 26 U.S.C. § 4412, did not contravene the privilege against self-incrimination guaranteed by the Fifth Amendment. *Lewis* had held that compliance with the occupational tax imposed by 26 U.S.C. § 3290, the forerunner of 26 U.S.C. § 4411 was not in derogation of the protection of the Fifth Amendment against self-incrimination. Because *Kahriger* and *Lewis* foreclosed any effective assertion by Grosso of his privilege against self-incrimination, the Supreme Court held in reviewing his case that his failure to raise the defense constituted no waiver of his constitutional right. It said at 390 U.S. at 71, 88 S.Ct. at 715:

> "Given the decisions of this Court in *Kahriger* and *Lewis,* supra, which were on the books at the time of petitioner's trial, and left untouched by Albertson v. SACB, supra, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165, we are unable to view his failure to present this issue as an effective waiver of the constitutional privilege."

In addition, the Court found that the record was barren of any other evidence on which a finding of waiver of the privilege might be based. 390 U.S. at 71, 88 S.Ct. 709.

On May 24, 1968, the defendants (so referred to hereafter) began the present action under 28 U.S.C. § 2255 to vacate their convictions and sentences, basing their right to relief upon the holdings in the *Marchetti* and *Grosso* cases. The action presents two questions, i. e., (1) whether defendants by failing to assert their privilege against self-incrimination before being sentenced and by pleading guilty thereby waived their right to assert it now, and (2) whether the principles announced in *Marchetti* and *Grosso,* supra, six months after defendants' convictions, apply retroactively to them. The second question need not be decided since the answer to the first is adverse to defendants and requires a dismissal of the petition.

 Courts will indulge every reasonable presumption against finding a waiver of basic constitutional rights. Glasser v. United States, 315 U.S. 60, 71, 62 S.Ct. 457, 86 L.Ed. 680 (1941). In order for a defendant to be held to have waived his constitutional rights, a court must ordinarily find that the defendant has made an "intelligent relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). A waiver must be the result of a "considered choice" by the defendant. Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1962). Thus a defendant who, after consulting with competent counsel, understandingly and knowingly foregoes the right to assert a federal claim at trial or on appeal for strategic, tactical or practical reasons, waives the right later to assert it on collateral attack. See Henry v. Mississippi, 379 U.S. 443, 451–452, 85 S.Ct. 564, 13 L.Ed.2d 408 (1964); Fay v. Noia, supra, 372 U.S. at 439, 83 S.Ct. 822.

 Applying these standards, we view the actions of defendants as a waiver of the right to assert a privilege against self-incrimination. A hearing was held on October 25, 1968, on the waiver issue. Based upon the evidence

---

1. For present purposes compliance with § 4411 involves constitutional questions indistinguishable from those relating to compliance with § 4412 under which the defendants at bar were convicted.

then adduced, and from other records in the files of the Court, the following facts appear:

On July 7, 1965, two informations were filed in this District in Criminal Actions Nos. 1711 and 1712, which charged that the respective defendants in the instant case were engaged in the business of accepting wagers, and had unlawfully failed to pay the special occupational tax demanded by 26 U.S.C. § 4411, for the fiscal years ended June 30, 1965 and 1966. Almost immediately thereafter defendants retained an experienced Delaware attorney who had represented other persons charged with offenses like those facing defendants. Thereafter he continuously represented defendants in Criminal Actions Nos. 1711 and 1712, in Criminal Action No. 1795 (discussed below) and in the pending Civil Action under § 2255. He also represented defendants in corporate legal matters.

On July 16, 1965, defendants moved to dismiss the informations in Criminal Actions Nos. 1711 and 1712, alleging, among other things, that "[t]he charge in question is unconstitutional". This defense was asserted because defendants' attorney was of the opinion that *Kahriger* and *Lewis* notwithstanding, compliance with the statute which defendants had been charged with violating would force defendants to incriminate themselves. On February 14, 1966, defendants' attorney wrote to the Court stating that, after "conferences and agreements" with the United States Attorney, he was withdrawing various motions, including the motions to dismiss. Accordingly, the latter were never acted upon by the Court. On September 13, 1966, upon motion of the Government, the informations were dismissed.

Meanwhile, the day before the dismissal of Nos. 1711 and 1712, the Government had filed a single information against both defendants in Criminal Action No. 1795. Defendants were convicted under Count I of this information after changing their initial plea of not guilty to guilty. It is from this conviction that defendants now seek relief under § 2255.

The reasons that caused defendants to change their pleas were testified to by their attorney at the hearing on October 25, 1968. He stated that before the defendants did so he had discussed with them whether he should make the contention that compliance with § 4412 would be self-incriminatory and contrary to their Fifth Amendment guarantees. He said that at the time he was retained by the defendants he was familiar with United States v. Kahriger, supra, and Lewis v. United States, supra, and had told the defendants that he was of the opinion that the District Court had no choice except to follow *Kahriger* and *Lewis,* supra, until they were overruled. But he also testified that it was his opinion at that time that the *Kahriger* and *Lewis* cases were "completely illogical" and that "in light of the modern trend" these cases would probably be overruled by the Supreme Court. He, therefore, advised defendants that if they asserted that compliance with the statutes would violate their constitutional rights against self-incrimination, the charges against them would probably ultimately be dismissed, but that they would have to go "all the way to the Supreme Court" to sustain the validity of their position. The defendants were unwilling to bear the expense of an appeal and were also concerned about the expense involved in the trial itself. They were told by their attorney that those who, like themselves, were charged with similar offenses and had no previous criminal record, had been given suspended sentences with probation. It was in the light of the totality of this advice that the defendants elected to enter guilty pleas rather than assert the Fifth Amendment privilege and go to trial. These same considerations entered into the decision by the defendants to withdraw their motions to dismiss in Criminal Actions Nos. 1711 and 1712.

The determination by defendants not to rely upon their constitutional privilege against self-incrimination was not

based upon the assumed validity of the *Kahriger* and *Lewis* cases. On the contrary, defendants had been advised that these decisions probably would not stand up upon reexamination. In entering guilty pleas without making a contest on the issue of constitutional privilege, defendants were motivated solely by practical considerations. Under these circumstances, when defendants determined not to attack § 4412 on the ground that compliance would be self-incriminating, they made a deliberate, considered and intelligent choice.[2] See Henry v. Mississippi, supra, 379 U.S. at 450–452, 85 S.Ct. 564; Fay v. Noia, supra, 372 U.S. at 439, 83 S.Ct. 822. In doing so they thereby waived their right to now assert that their conviction was invalid on the ground that compliance with § 4412 would have violated their privilege against self-incrimination.

Furthermore, Marchetti and Grosso were convicted after trials, whereas the defendants pleaded guilty to the charges against them. It is a basic rule of criminal law that a plea of guilty knowingly and voluntarily entered into with the advice of competent counsel constitutes a waiver of all nonjurisdictional defects and defenses except the defense that the indictment charges no offense. United States v. Ptomey, 366 F.2d 759 (3d Cir. 1966); United States ex rel. Maisenhelder v. Rundle, 349 F.2d 592 (3d Cir. 1965); United States v. Gallagher, 183 F.2d 342 (3d Cir. 1955), cert. denied, 340 U.S. 913, 71 S.Ct. 283, 95 L.Ed. 659 (1951).[3]

It is to be noted that none of these cases dealt with a defense, sought to be asserted after the entry of a sentence following a guilty plea, which courts had not recognized to be valid prior to sentence.[4] In this respect the cited cases are distinguishable from the one at bar.

No significance, however, was attached to this distinction in Whaley v. United States, 394 F.2d 399 (10th Cir. 1968). In *Whaley*, the defendant, without raising the privilege against self-incrimination at any prior time, pleaded guilty to charges of possession of a sawed-off shotgun transferred in violation of 26 U.S.C. § 5851. After Whaley had been sentenced, Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722 (1968), was decided. *Haynes* held that a proper

---

2. Before the defendants were sentenced on June 2, 1967, in Criminal Action 1795 the following events were a matter of public record:

On March 21, 1966, the Supreme Court granted certiorari in Costello v. United States, 383 U.S. 942, 86 S.Ct. 1195, 16 L.Ed.2d 205 (1966), to reexamine the constitutionality under the Fifth Amendment of the pertinent provisions of the wagering statutes, and more particularly to consider whether *Kahriger* and *Lewis* still possessed vitality. 390 U.S. 41 n. 1, 88 S.Ct. 697. After Costello died, certiorari was then granted on January 9, 1967, in Marchetti v. United States, 385 U.S. 1000, 87 S.Ct. 698, 17 L.Ed.2d 540 (1967) to consider the same issues as were presented in Costello, viz., (390 U.S. 39, 41, 88 S.Ct. 697, 699 n. 1):

"Do not the federal wagering tax statutes here involved violate the petitioner's privilege against self-incrimination guaranteed by the Fifth Amendment? Should not this Court, especially in view of its recent decision in Albertson v. Subversive Activities Control Board, 382 U.S. 70, [86 S.Ct. 194, 15 L.Ed.2d 165] (1965), overrule United States v. Kahriger, 345 U.S. 22, [73 S.Ct. 510, 97 L.Ed. 754] (1953), and Lewis v. United States, 348 U.S. 419, [75 S.Ct. 415, 99 L.Ed. 475] (1955)?"

On October 10, 1966, certiorari was granted in Grosso v. United States, 385 U.S. 810, 87 S.Ct. 47, 17 L.Ed.2d 53 (1966).

Defendants' lawyer testified that he was not aware of the grants of certiorari in the above cases.

3. These decisions are not at variance with Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968). In *Haynes*, the defendant pleaded guilty only after the trial judge overruled his assertion of the privilege. The Supreme Court held that, because of this prior assertion, the guilty plea did not constitute a waiver of the privilege.

4. With the exception of Whaley v. United States, infra, 394 F.2d 399 (10th Cir. 1968), our research reveals no case discussing this precise problem.

assertion of the privilege was a complete defense to the charges for which the defendant had been convicted. Whaley then brought an action under 28 U.S.C. § 2255, upon the basis of the *Haynes* decision, to vacate the judgment and sentence. The Court of Appeals held that the defendant's plea of guilty, in the absence of an assertion of the privilege at the trial level, constituted a waiver of the privilege. This was despite the fact that the defendant was sentenced before the *Haynes* decision had been rendered. The Court stated that the guilty plea waived the privilege against self-incrimination because the plea constituted the "ultimate act of self-incrimination". 394 F.2d at 401.

Whether or not *Whaley* attributed too much significance to a plea of guilty as it bears upon the waiver issue in the circumstances of that case, need not be decided. In the instant case, the record reveals much more than the mere entry of guilty pleas. It discloses that defendants knowingly refrained from raising the privilege against self-incrimination defense and instead consciously chose to plead guilty. This was in the face of legal advice that the then existing decisions (*Kahriger* and *Lewis*, supra,) which foreclosed the valid assertion of the constitutional defense probably would not ultimately withstand challenge in view of the current attitude of the Supreme Court. This combination of circumstances is sufficient to overcome any presumption that defendants did not waive their right to now assert the constitutional invalidity of their conviction. Henry v. Mississippi, supra, 379 U.S. at 450–452, 85 S.Ct. 564 (1964); Fay v. Noia, supra, 372 U.S. at 439, 83 S.Ct. 822 (1962). The facts at bar contrast sharply with the situation in Grosso v. United States, supra, where the Court said (390 U.S. at 71, 88 S.Ct. at 715):

> "The record is barren of any evidence on which a finding of waiver of the privilege against self-incrimination might properly be predicated * * ".

The motion of defendants for relief under § 2255 will be denied.

This opinion constitutes the findings of fact and conclusions of law required by 28 U.S.C. § 2255.