UNITED STATES of America ex rel. Albert LaMOLINARE, Appellant,

v.

Robert W. DUGGAN, District Attorney, Allegheny County, Pittsburgh, Pa., James Maroney, Supt., State Correctional Institution, Pittsburgh, Pa.

No. 17420.

United States Court of Appeals Third Circuit.

Submitted on Briefs Jan. 23, 1969.

Decided July 25, 1969.

Albert LaMolinare, pro se.

Charles B. Watkins, Asst. Dist. Atty., Pittsburgh, Pa. (Robert W. Duggan, Dist. Atty. of Allegheny County, Pittsburgh, Pa., on the brief), for appellees.

Before HASTIE, Chief Judge, and McLAUGHLIN and STAHL, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Chief Judge.

The appellant, a state prisoner, is seeking federal habeas corpus on the ground that his conviction of larceny and receiving stolen goods resulted from a trial by a judge sitting without a jury which did not satisfy the requirements of due process of law. More particularly, he complains that the police obtained the stolen articles by an illegal search and seizure of his car and thereafter used them as evidence against him at his trial. He also complains that he did not have effective representation by trial counsel.

These issues were first raised in an unsuccessful collateral attack on the conviction in the state courts, where the accused was permitted to support his contentions at an evidentiary hearing. The district court had before it the record of the state habeas corpus hearing. Without taking additional testimony, the district court denied relief and the prisoner has appealed.

■ Under Pennsylvania law, failure to raise the issue of illegal search or seizure before or at trial forecloses any subsequent consideration of such a contention. Commonwealth ex rel. Cully v. Myers, 1966, 422 Pa. 561, 222 A.2d 910; Pa.R.Crim.P. 323, 19 P.S. Appendix. Indeed, in this case the courts of Pennsylvania invoked that rule against the appellant's claim.

■■ The Supreme Court has found such a restrictive rule a reasonable vindication of a legitimate state interest. Henry v. Mississippi, 1965, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408. However, the *Henry* case also teaches that only a deliberate or considered bypassing or waiver of the opportunity to raise the issue in the state trial court will preclude the accused from having the merits of the issue adjudicated as a Fourth Amendment question when the conviction is collaterally attacked by way of federal habeas corpus. Accordingly, we consider whether such waiver is established by the present record.

At appellant's trial the prosecution introduced evidence of the circumstances attending the search of appellant's car and the seizure of stolen goods found in it. A telephone call of unknown origin relayed to a police officer on patrol caused him to investigate a particular parked car. Visual observation showed that the car contained a television set, a strong box, a clock radio and cartons of

cigarettes and that the car key was in the ignition switch. While still on the scene the officer received a call from police headquarters that a report had been received that a burglary was in progress in a house nearby.

Leaving the car the officer approached the house in question where he and another officer who also had received the burglary report observed, but were unable to apprehend, three men fleeing from the building. Thereafter, on instructions from his superiors, the officer had the car towed to police headquarters where the observed articles were removed. The articles were later identified as stolen, at least part of them during an earlier burglary.

The police took possession of the car and the articles in it believing that the articles had been stolen by the intruders who had just escaped and that the car was the intended get away vehicle. We think this belief was a reasonable inference from the information that the police had. The telephone call concerning a burglary in progress followed by the flight of three men from the scene provided ample reason for believing that the police had interrupted a burglary. An unusual collection of household articles was observed in the nearby car. At least some of the articles seem to have been visible without entering the vehicle. The key in the ignition suggested readiness for quick departure.

It was in this setting that the defendant's trial counsel elected not to object to the admission into evidence of the household articles found in and taken from the defendant's automobile.

At the hearing on collateral attack in the state court, the petitioner's trial counsel testified as follows concerning his failure to object to the evidentiary use of these articles:

"BY THE COURT:

Q. May I ask you, do you recall the case?

A. Yes. Generally, your Honor, not in detail but I do. I have a recollection of the case. I remember Mr. LaMolinare very well because we have had many many conversations, he and I.

Q. Do you recall whether or not you considered the question of raising the question of the legality or the alleged legality of the search and seizure?

A. I am trying to remember in detail that particular point. I had considered this and at that time we decided there wasn't any illegal search and seizure involved in this case. This is my recollection why I came to that conclusion. I can't remember specifically without again reviewing all the testimony.

Q. The subject was before you?

A. That is right.

Q. You decided not to raise the question?

A. That is right.

THE COURT: Any other questions?

MR. KING: No other questions.

MR. ABROMSON: Nothing more."

In addition, the appellant himself testified: "at the time of the trial I left my case in Mr. Dixon's hands. He conducted it the way he seen fit."

Thus, defense counsel, exercising his best judgment and with at least the tacit consent of his client, decided not to seek to suppress the evidence taken from his car. This procedure was consistent with the line of defense adopted by the accused. He insisted that on the night of the robbery he had loaned his car to a friend and knew nothing of its use from that time until its seizure by the police. Since, according to his story, his car was in the possession of another and he knew nothing about and had no interest in the contraband placed in the car, a posture of indifference to the introduction of the stolen articles in evidence may well have been considered more advantageous than an attack upon their admissibility. Add counsel's stated belief, not remarkable in the circumstances, that a claim of unreasonable search and seizure would fail, and the

picture emerges as a deliberate and rational choice to forego the obvious opportunity to challenge the seizure by available procedure in the state court.

As has been stated, the court below had before it the record thus made in the state habeas corpus proceeding. Only the accused and his trial counsel would know why they did not claim unreasonable search and seizure when the stolen articles were offered as evidence. Their testimony on state habeas corpus adequately disclosed their motivation and the attendant circumstances. The present record disclosed no indication of any attempt or desire to change their position or testimony on federal habeas corpus. Therefore, we think that the doctrine of Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, as now embodied in section 2254(d) of title 28, United States Code, did not require the court below to conduct an evidentiary hearing to cover again the ground covered by explicit testimony of the only knowledgeable witnesses in the state proceeding. Cf. Wade v. Yeager, 3d Cir.1967, 377 F.2d 841.

In its opinion the court below mentioned and apparently accepted as true counsel's testimony in the state proceeding that he had considered the question of unlawful search and seizure and had decided not to raise the issue. In all of the circumstances, we think it fair and proper to view the decision below as embodying a warranted finding that the opportunity to assert this contention was deliberately waived.

In these circumstances, we think a federal determination of the dubious merits of the unlawful search and seizure issue is not required. Henry v. Mississippi, *supra*, 379 U.S. at 451–452,

85 S.Ct. 564; Mize v. Crouse, 10th Cir. 1968, 399 F.2d 593, cert. dismissed, 1969, 394 U.S. 913, 89 S.Ct. 1177, 22 L.Ed.2d 448; Pope v. Swenson, 8th Cir.1968, 395 F.2d 321; Davis v. Dunbar, 9th Cir. 1968, 394 F.2d 754, cert. denied, 393 U. S. 884, 89 S.Ct. 192, 21 L.Ed.2d 159.

On the broader issue of effective representation by counsel, the record adequately establishes, as the court below found, that Constitutional requirements were satisfied in this case.

The judgment will be affirmed.

STAHL, Circuit Judge (dissenting).

I respectfully dissent. I believe that under Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the district court was required to hold an evidentiary hearing to determine whether the right to challenge the legality of the search and seizure had been waived and, if not, whether the search was valid.

The only light shed in the record on the issue of waiver is in the state court habeas proceeding where the state judge prohibited any direct testimony on the claim of illegal search and seizure because it had not been raised at trial. Hearing Transcript (H.T.) 7.[1] However, some evidence relating to waiver came in during testimony regarding the adequacy of counsel:

Q. You are now saying that you were not aware that, if you wish to complain about the illegal search of your car, you weren't aware of it and told this at the time of trial. Is that what you are saying?

A. [by La Molinare] At the time of the trial, yes. *At the time of the trial I left my case in Mr. Dixon's*

1. The following colloquy took place early in the hearing:

Q. * * * [by counsel for petitioner directed to the latter] Now, it is your contention that the evidence, part of the evidence that was used at your trial in April of 1964 was taken from a motor vehicle owned by you and not in your presence?

THE COURT: I don't want you to go into that. I want you to go into the question of counsel. You are raising the inadequacy of counsel. I am not going to let you prove illegal search. That has to be proved before the trial. That cannot be made a subject of Habeas Corpus. We have a procedure to raise it.

MR. KING: Very well.

*hands. He conducted it the way he seen fit.*

Parts he brought out I thought were very good. As I say, with illegal search was a direct result of my conviction. I don't think it was brought up where it should have been brought up and it wasn't. (Emphasis added; H.T. 12.)

This testimony on the issue of waiver is at best ambiguous. I would not think that this unilluminating answer by an inarticulate petitioner, the italicized portion of which is relied on in part in the majority opinion, is a sufficient basis for disposition of the waiver question.

In his pro se reply brief before this court (p. 8) La Molinare stated:

\* \* \* This petitioner did not know his attorney until late in the afternoon on the day prior to his trial, no discussing [sic] was held pertaining to the illegal search and seizure and arrest counsel decided that on his own.

La Molinare's trial counsel testified as follows in the state habeas corpus hearing:

BY THE COURT:

Q. May I ask you, do you recall the case?

A. Yes. Generally, your Honor, not in detail but I do. I have a recollection of the case. I remember Mr. La Molinare very well because we have had many many conversations, he and I.

Q. Do you recall whether or not you considered the question of raising the question of the legality or the alleged legality of the search and seizure?

A. I am trying to remember in detail that particular point. *I* had considered this and at the time *we* decided there wasn't any illegal search and seizure involved in this case. That is my recollection why *I* came to that conclusion. I can't remember specifically without again reviewing all the testimony.

Q. The subject was before you?

A. That is right.

Q. *You* decided not to raise the question?

A. That is right. (H.T. 29–30; emphasis added.)

The quoted testimony is equivocal. La Molinare asserts he wished to have the search and seizure issue raised and it was not. He claims further that he did not discuss the issue with counsel. Trial counsel admits to some difficulty in recalling this particular point.

It was trial counsel who made the decision not to raise the search and seizure issue. As indicated, he testified: "I had considered this and at the time *we* decided there wasn't any illegal search and seizure involved in this case." (H. T. 30.) It is not entirely clear whether the other party in "we" referred to La Molinare, or possibly to other counsel previously involved in the case.[2]

The ambiguity which pervades the various items of state testimony on the search and seizure claim does not, in my view, form a sufficient basis for a resolution of appellant's constitutional rights without an evidentiary hearing below.[3] The burden of establishing waiver is on the state. Hayden v. Warden, 363 F.2d 647, 649 (4th Cir.1966), rev'd on other

2. In appellant's main brief to this court he states that he talked to several lawyers from the Legal Aid Society of Allegheny County before conferring with the counsel who ultimately represented him, also a Legal Aid Society lawyer. It may be, as is not uncommon, that trial counsel consulted with the other members of the Legal Aid Society staff about the case before proceeding to trial.

3. As was said in connection with another aspect of the search and seizure guarantee of the Fourth Amendment.

\* \* \* [R]ights given by the Constitution are too fundamental and too precious for waiver lightly to be found. \* \* \* United States v. Blalock, 255 F.Supp. 268, 269 (E.D.Pa.1966).

In Masterson v. United States, 293 F. Supp. 787, 789 (D.Del.1968), Judge Steel said: "Courts will indulge every reasonable presumption against finding a waiver of constitutional rights. \* \* \*"

grounds, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); United States ex rel. Moore v. Follette, 275 F.Supp. 416, 419 (S.D.N.Y.1967). In Smith v. Yeager, 393 U.S. 122, 126, 89 S.Ct. 277, 279, 21 L.Ed.2d 246 (1968), the Court said:

> "If, for any reason not attributable to the inexcusable neglect of petitioner * * * evidence crucial to the adequate consideration of the constitutional claim was not developed at the state hearing, a federal hearing is compelled." * * * citing Townsend v. Sain, *supra*.

I should point out that the majority does not flatly contend that La Molinare actually consented to the waiver. The majority opinion states:

> Thus, defense counsel, exercising his best judgment and with at least the *tacit consent* of his client, decided not to seek to suppress the evidence taken from his car. (Emphasis added.)

As I read the test of waiver established in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), note 4 *infra*, "tacit consent" is not enough. The standard established by Justice Brennan in the *Fay* case[4] cannot be met on the inadequate record of the state court on the waiver issue. Even though under its state law Pennsylvania bars the raising of an issue that was not raised by pretrial motion or at trial, this does not preclude a federal court from protecting constitutional rights on collateral attack. Fay v. Noia, *supra*; United States ex rel. Snyder v. Mazurkiewicz, 413 F.2d 500 (3d Cir.1969).

What we said regarding the record in *Snyder* is equally applicable here:

> * * * Undoubtedly, the record is capable of supporting the hypothesis that no objection was made by counsel for tactical reasons. On the other hand, it is equally capable of supporting the appellant's assertion that he had no part in counsel's decision not to object. * * * 413 F.2d at 502.

Such ambivalence is particularly pertinent where defense counsel is first seen by petitioner the afternoon before the day of the trial, after the time for making pretrial motions has passed. This adds to the difficulty in determining the waiver issue without a full evidentiary hearing in the district court. The short period in which counsel had to prepare suggests the possibility that he may not have fully investigated the search and seizure question.[5]

Moreover, I cannot fully subscribe to the majority's notion that counsel's failure to raise the search and seizure issue was a "sound tactical move." *See* United States ex rel. Snyder v. Mazurkiewicz, *supra*. The majority suggests that La Molinare may have obtained a negative benefit by his counsel's failure to object to the admission of the evidence, as the trial court might have inferred from such objection that appellant was

---

4. * * * The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U. S. 458, 464, 58 S.Ct. 1019, ——, 82 L.Ed. 1461—"an intentional relinquishment or abandonment of a known right or privilege"—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claim in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the fed-

eral court had satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. * * * At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner * * * 372 U.S. at 439, 83 S.Ct. 822.

5. An opportunity for a fuller investigation may have led trial counsel to consider a request for a continuance in order to permit him to make a timely pretrial suppression motion. Trial counsel did testify that he examined the Legal Aid Society file, developed by an investigator, prior to trial, H.T. 26, but there is no indication whether the file contained any information relevant to the search and seizure issue.

unduly concerned about the introduction of items he claimed had no relation to him. It is difficult to consider such a speculative benefit as a predicate for a deliberate bypass when counsel could have moved to suppress the admission of the items, and if unsuccessful, could still have introduced evidence to substantiate La Molinare's claim that he had loaned his car to a friend during the critical period of time involved. Furthermore, we should remember that this was a nonjury trial, and that the tactical stratagem posed by the majority would sway a judge considerably less than a jury.

Inherent in the concept of "deliberate bypass" of state procedures must be the clear likelihood of substantial benefit to a defendant's case. I believe that a choice by counsel alone, without a greater showing of probable benefit to appellant, is far from sufficient to justify a finding of waiver of his rights.

Considering that I would remand this case for an evidentiary hearing on waiver, I do not wish to enlarge on my concern about the substantive aspects of the search and seizure issue where different inferences from the factual matrix of the case are possible so as to justify a hearing on the legality of the search. Clarke v. Henderson, 403 F.2d 687 (6th Cir.1968). For example, it is unclear precisely what information the police had when they first reached the automobile. It was after they began the search of the parked, unattended vehicle that the police were informed that an attempted burglary was in progress. It is also not entirely clear whether the officer who conducted the search saw the articles involved before he entered appellant's car.[6] Cf. United States ex rel. McArthur v. Rundle, 402 F.2d 701 (3d Cir.1968).

For the foregoing reasons I would remand this appeal to the district court for an evidentiary hearing on the question of whether appellant had waived his right to challenge collaterally the search which produced evidence prejudicial to him. If no waiver is found, the merits of the claim of illegal search and seizure should then also be considered.[7]

6. * * * When I got there there was nobody in the car. As I looked in the car I seen keys in there and I took the keys out and I noticed in the car was a TV, a strong box, cartons of cigarettes, and a white clock radio. I received a phone call while I was there from the Chief that someone was breaking into the home of Mr. Shalfa, Ardmore Manor. (Trial Transcript, p. 3, testimony of Officer Ragan.)

7. In the state habeas corpus hearing, held in 1965, the District Attorney pointed out that since the items produced by the disputed search of the car were involved in only one (actually it appears to have been two) of the four indictments on which appellant received *concurrent* sentences of one and one-half to three years, he would have nothing to gain even if he were to prevail on the Fourth Amendment issue. (H.T. 4–6) The concurrent sentence doctrine, which reached its pinnacle in Hirabayshi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943), only recently met its demise in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Speaking for the majority, Justice Marshall said:

> * * * [W]hatever the underlying justifications for the doctrine, it seems clear to us that it cannot be taken to state a jurisdictional rule. * * * Moreover, whatever may have been the approach in the past, our recent decisions on the question of mootness in criminal cases make it perfectly clear that the existence of concurrent sentences does not remove the elements necessary to create a justiciable case or controversy.

395 U.S. at 789, 790, 89 S.Ct. at 2060. *See also* the opinion of Judge Spaulding in Commonwealth v. Johnson, 212 Pa. Super. 158, 163, 239 A.2d 867, 870 (1968), where he stated, in connection with a similar contention, that "each conviction may critically affect any subsequent sentencing under the so-called [Pennsylvania] 'Habitual Criminal Statute,' [footnote omitted] or may be relevant in parole or other considerations."

Furthermore, we do not know what effect appellant's success on a search and seizure objection may have had on the trial judge who conducted the nonjury trial on three of the indictments, two of which involved in part evidence produced by the search of the automobile. Also, the same automobile was identified as having been used in the offense charged in the third indictment.