**UNITED STATES of America ex rel. Edwin W. GOCKLEY**

v.

**David N. MYERS, Superintendent.**

**Misc. No. 2790.**

United States District Court
E. D. Pennsylvania.

Nov. 28, 1967.

H. Robert Fiebach, Philadelphia, Pa., for relator.

Ralph J. Althouse, Jr., Asst. Dist. Atty., Reading, Pa., for respondent.

## OPINION

LUONGO, District Judge.

Edwin W. Gockley was convicted of murder in the second degree and sentenced by the state court to not less than 10 nor more than 20 years imprisonment. The Pennsylvania Supreme Court affirmed the conviction. Commonwealth v. Gockley, 411 Pa. 437, 192 A.2d 693 (1963). After exhausting state remedies, Gockley filed the instant habeas corpus petition on August 7, 1964, in which he charged that his constitutional rights had been violated by the use, at his trial, of evidence obtained by an illegal search and seizure, and by the admission of involuntary statements obtained from him by the police.

On October 12, 1964, the petition was denied without hearing. As to the search and seizure charge, this court held that the record amply supported the state court's finding that relator had consented to the search conducted by the police. As for the statements, relator's *pro se*

allegations were interpreted as complaining of the state court's use of inconsistent statements as evidence of guilt. So interpreted, it was held that the petition presented a question of state law and did not raise a constitutional issue for habeas corpus, citing United States ex rel. Saunders v. Myers, 276 F.2d 790 (3d Cir. 1960). United States ex rel. Gockley v. Myers, October 12, 1964 (unreported). On appeal, the disposition of the search and seizure question was upheld, but the judgment denying the writ was vacated on the ground that the petition had clearly raised the issue of the use of involuntary statements. The matter was remanded to this court to determine whether there had been an effective waiver by Gockley of any right to have the statements excluded and, if there was no waiver, "to consider and decide whether due process of law was denied by the use of this evidence against the accused." United States ex rel. Gockley v. Myers, 378 F.2d 398, 401 (3d Cir. 1967).

The mandated evidentiary hearing has been held. From that hearing and from the state court records, these facts emerge:

In the spring of 1961, Gockley became the principal figure in an investigation of the disappearance of two persons, Mabel Klein and Clement Smith. The police questioned Gockley periodically over a span of several months and, on November 17, 1961, at approximately 6:00 p. m. arrested him. The police questioned him for several hours that evening, and for two hours in the morning and two hours more in the evening of November 18, 1961. On the morning of the 19th, Gockley made a statement to the District Attorney of Berks County implicating himself in the death of Clement Smith. After checking out the details of the statement, the police concluded that Gockley had not been completely truthful. On December 9, 1961, almost three weeks after Gockley made his initial statement, the police confronted him with the discrepancies revealed by their investigation whereupon Gockley made another statement inconsistent in some material respects with the one made on November 19th. During all the period from November 17 to December 9, Gockley was in custody. He was not represented by nor had he communicated with counsel. On December 12, 1961, the Berks County court appointed Messrs. Binder and Havelow to represent Gockley.

At the trial, in response to a specific question by the court, counsel (Binder) stated that he had no objection to the introduction of the statement of November 19, 1961. Objection was made to the admission of the second and inconsistent statement and to the jury's being permitted to consider the inconsistent statements as evidence of guilt.

*Waiver of the right to exclude involuntary statements.*

■ The Commonwealth contends that Gockley's failure to object to the admissibility of the statements on the grounds of involuntariness constituted an effective waiver of the right to mount a collateral attack on the use of his statements. There are two parts to the Commonwealth's waiver argument. The first part is based on the state contemporaneous objection requirement. Because of several recent Pennsylvania decisions, we need not decide whether Gockley's procedural default precludes him from asserting his federal constitutional claim. In Commonwealth v. Snyder, 427 Pa. 83, 88, 233 A.2d 530, 533 (1967), the Pennsylvania Supreme Court stated in footnote 2:

"To meet our contemporaneous objection requirement it is not necessary that the objection be made immediately before the attempted admission of the challenged confession. For example, in Jackson v. Denno, supra [378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908] the trial court was informed that the voluntariness of the confession was in issue through attack upon the confession during cross-examination. As indicated in [Commonwealth ex rel.] *Fox* [v. Maroney, 417 Pa. 308, 207 A.2d 810(1965)], a request of any kind which serves to alert the trial judge to an issue of voluntariness is sufficient."

See also Commonwealth ex rel. Alexander v. Maroney, 426 Pa. 186, 231 A.2d 746 (1967); Commonwealth ex rel. Mullenaux v. Myers, 421 Pa. 61, 217 A.2d 730 (1966).

■ Although 'there was a failure to object to the admission of Gockley's statements on the ground that they were involuntary, counsel nevertheless attacked their voluntariness. Gockley took the stand and related the alleged abuses upon which his present cla n of involuntariness is based. Counsel elicited considerable testimony relevant to voluntariness through cross-examination of the Commonwealth's witnesses. One of the points for charge submitted by counsel requested instructions on voluntariness. All this was sufficient to place voluntariness in issue and to satisfy the state contemporaneous objection requirement.

■ The second part of the waiver question is whether the failure to object was deliberate. When the failure to interpose a constitutional objection reflects a conscious desire to deliberately by-pass state procedures and remedies, an accused will be deemed to have waived the constitutional objection. Henry v. State of Mississippi, 379 U.S. 433, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Fay v. Noia, 372 U.S. 391, 438–441, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963); Budd v. Rundle, 267 F. Supp. 49 (E.D.Pa.1967); United States ex rel. Stamm v. Rundle, 270 F.Supp. 819 (E.D.Pa.1967). The Court of Appeals, in reversing the denial of Gockley's petition, noted the possibility that the failure to object might have been motivated by sound trial strategy, stating at page 401 of 378 F.2d:

"The statement, though incriminating, also contained matter calculated to support a claim of self defense or at least to negate malice aforethought. Indeed, if this was the strategy of the defense, it was successful. For a trial which might well have resulted in a first degree verdict and a capital sentence eventuated in a second degree verdict and a ten to twenty year sentence."

From Mr. Binder's testimony at the hearing before me, however, it is clear that counsel considered the statements and the fruits thereof prejudicial and would have preferred to have them excluded. But for the admission of the statements, counsel would have advised Gockley not to take the witness stand. Although, from the testimony before me, it appears highly unlikely that Gockley would have followed counsel's advice not to testify, I cannot speculate as to what Gockley might have done if counsel had succeeded in keeping out the incriminating statements. In explanation of his failure to object to the admission of the statements on the grounds of involuntariness, Mr. Binder testified:

"Under the law of Pennsylvania at that time, the question of the voluntariness of a statement or confession was purely one for the jury and we considered that to make an objection to the introduction into evidence of the confession itself would be fruitless and might antagonize the jury.

"We had already at that time entered many objections on the record and were concerned with the appearance that the jury might be given * * * our being obstructionists in the case and we didn't do—want to do anything that would not be effective and at the same time might hurt us with the jury." (N.T. 12)

■ Gockley's criminal trial occurred before Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) struck down, as violative of due process, procedures whereby the jury, in the first instance, were required to determine the voluntariness of a confession. *Jackson* has been applied retroactively. See Senk v. Pennsylvania, 378 U.S. 562, 84 S.Ct. 1928, 12 L.Ed.2d 1039 (1964) which vacated and remanded Commonwealth v. Senk, 412 Pa. 184, 194 A.2d 221 (1963) on authority of *Jackson.* For another example of the retroactive application of *Jackson* see Oister v. Commonwealth of Pennsylvania, 378 U.S. 568, 84 S.Ct. 1926, 12 L.Ed.2d 1038 (1966). The rule enunciated in *Jackson* is that

before a statement may be admitted in evidence there must be a preliminary determination by the court or a jury other than the trial jury that the statement is voluntary. Pennsylvania's procedure at the time of Gockley's trial was similar to that proscribed in *Jackson*. Unless a confession was clearly coerced, the confession, including the question of its voluntariness, was required to be submitted to the jury. On the basis of what Gockley had related to counsel[1] concerning the circumstances surrounding the giving of the statements, counsel concluded that the statements were not clearly involuntary, and, therefore, were required to be submitted to the jury. Counsel could not have anticipated the Supreme Court's holding in *Jackson*. Under the then state of the law an objection to the *admissibility* of the statements would have been fruitless and perhaps even harmful to Gockley's case. Counsel's choice was effectively limited to attacking voluntariness before the same jury that was to consider the eventual question of Gockley's guilt or innocence. From Binder's testimony, it is apparent that if counsel could have had the issue of voluntariness determined preliminarily by the trial judge, out of the presence of the jury, he would have done so. Since that right did not exist prior to *Jackson*, Gockley and his counsel cannot be said to have intelligently waived it, or to have deliberately by-passed it.[2] See Ledbetter v. Warden, Maryland Penitentiary, 368 F.2d 490 (4th Cir. 1966).

I conclude, therefore, that Gockley did not waive the right to have the statements excluded, if it should be determined that they were involuntary.

■ In remanding this case for further proceedings, the Court of Appeals directed that, "if the court finds no waiver of constitutional right to challenge the admission of petitioner's statement,

\* \* \* to consider and decide whether due process of law was denied by the use of this evidence against the accused." Unquestionably the Court's mandate requires that I dispose of the case in accordance with law and, more particularly, in accordance with the guidelines laid down in *Jackson* in which the Supreme Court, after noting that the circumstances surrounding the giving of the statement were in dispute, decreed at p. 393 of 378 U.S., at p. 1789 of 84 S.Ct.:

> " \* \* \* we think that the further proceedings to which Jackson is entitled should occur initially in the state courts rather than in the federal habeas corpus court. Jackson's trial did not comport with constitutional standards and he is entitled to a determination of the voluntariness of his confession in the state courts in accordance with valid state procedures."

More recently the Court of Appeals had occasion to rule on this precise point in United States ex rel. Singer v. Myers, 384 F.2d 279 (3d Cir. Oct. 1967), and held that it was error for the federal habeas court to proceed without affording the state court an opportunity to hear and consider the attack on voluntariness:

> "The District Court rejected Myers' contention that should it conclude that an issue of voluntariness in Singer's statement had been presented, it should afford the Pennsylvania courts an opportunity for an evidentiary hearing. It construed Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) as not requiring such action.

> "We are \* \* \* of the opinion that since Pennsylvania has enacted a post-conviction statute which affords an available remedy to correct an abuse of federal due process in the administration of its criminal laws, that the District Court erred in failing to abstain from acting on Singer's habeas

---

1. Mr. Binder testified that prior to trial the only complaints related to him by Gockley dealt with the length of custody and extended periods of interrogation and the psychological atmosphere surrounding the questioning.

2. The Supreme Court in *Jackson* noted that the accused did not object to the introduction of his alleged confession at his trial. In footnote 1 the Court stated that, "no one suggests that petitioner'[,] deliberately waived his federal claim.

corpus petition pending exhaustion of his post-conviction remedy. Case v. State of Nebraska, 381 U.S. 336–337, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965)."

In conformity with the requirements of Jackson v. Denno, supra, and United States ex rel. Singer v. Myers, supra, Gockley must be remanded to the state courts for an evidentiary hearing on the voluntariness of his statements. If, after such evidentiary hearing, it is determined that his statements were involuntary, his conviction must be set aside and Gockley released from custody unless the Commonwealth tries him again and obtains a conviction without the use of such statements.