UNITED STATES of America ex rel.
George M. SNYDER, Appellant,

v.

Dr. Joseph F. MAZURKIEWICZ, Super-
intendent State Correctional Institu-
tion at Philadelphia.

No. 17626.

United States Court of Appeals
Third Circuit.

Argued May 23, 1969.

Decided July 24, 1969.

George M. Snyder, pro se.

Richard A. Devlin, Asst. Dist. Atty.,
Norristown, Pa. (Paul W. Tressler,
Asst. Dist. Atty., Parker H. Wilson, First
Asst. Dist. Atty., Milton O. Moss, Dist.
Atty., Montgomery County, Norristown,
Pa., on the brief), for appellee.

Before FREEDMAN, SEITZ and
ALDISERT, Circuit Judges.

OPINION OF THE COURT

ALDISERT, Circuit Judge.

The appellant was convicted of volun-
tary manslaughter in a Pennsylvania
court in 1961 and sentenced to 6–12 years
imprisonment. The conviction was af-
firmed by the Pennsylvania Supreme

Court in Commonwealth v. Snyder, 408 Pa. 253, 182 A.2d 495 (1962).[1]

In 1966, further relief was sought in a petition filed in the sentencing court under Pennsylvania's Post Conviction Hearing Act. This petition was dismissed without hearing and affirmed by the state Supreme Court in an extensive opinion at 427 Pa. 83, 233 A.2d 530 (1967).[2] Having exhausted his state remedies, the appellant then filed a habeas corpus petition in the district court below. Here he reiterated the arguments advanced in the state post-conviction proceeding. Foremost among these was the contention that the 1961 conviction had resulted from the admission at trial of allegedly coerced confessions.[3] Relying on the decision of the Pennsylvania Supreme Court, the district court denied relief without evidentiary hearing. This appeal followed, and was argued pro se by appellant who is now on parole.

The appellant has alleged facts describing the taking of his confessions which are strikingly similar to those portrayed in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).[4] Even so, because Snyder's trial occurred in 1961, three years before the decision in *Escobedo,* the non-retroactive rule of Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), precludes application of the precise rule of *Escobedo* to this case.

This is not to say, however, that the facts alleged by him are not relevant to the question whether the confession was his voluntary act. On the contrary, such facts could constitute significant components in the "totality of circumstances" affecting its voluntary character.[5]

Appellant claims that at the very least he is entitled to an evidentiary hearing so that he may demonstrate that the statements adduced from him by the police were the product of coercive forces. Diluting the efficacy of this apparently reasonable argument, however, has been a previous determination by the Pennsylvania Supreme Court that the appellant, for sound tactical reasons at trial, intentionally waived any objection to their introduction, "deliberately bypass[ing] state procedures available to litigate the

1. The issues raised on this direct appeal were: (1) it was error to permit evidence of a prior plea of nolo contendere to impeach the defendant when he testified in his defense; (2) the introduction of a vial of the victim's blood was prejudicial; and (3) the introduction of photos of the victim was prejudicial.

2. The issues raised on this collateral appeal were: (1) the introduction of four coerced confessions; (2) use of perjured testimony by the Commonwealth; (3) false statements by the trial judge obstructing the right to appeal; and (4) denial of due process in failing to afford an evidentiary hearing on the substantive allegations.

3. Appellant maintains that four separate coerced confessions were introduced against him: (1) an oral statement given to the arresting officers, written notes of which were introduced at trial; (2) a signed statement (Commonwealth Exhibit No. 35) obtained during interrogation at the stationhouse; (3) certain testimony concerning the re-enactment of the homicide performed by the appellant for the police; and (4) appellant's actual testimony at trial which he claims was involuntarily given.

   We have carefully considered each of these "confessions" and have concluded that only the first two are worthy of consideration.

4. Appellant alleges that the police initially attempted to prevent his attorney from ascertaining his whereabouts and failing to accomplish this, employed "an armed guard" to prevent the lawyer from gaining access to his client.

5. See Johnson v. New Jersey, *supra,* 384 U.S. at 730, 86 S.Ct. 1772; Davis v. North Carolina (384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). In addition to preventing him from consulting with counsel, the appellant alleges that while being interrogated, he could hear his wife screaming in an adjoining room, that he was refused permission to see her, that he was held incommunicado for five hours, that he was deceived into believing that he would be charged with nothing worse than manslaughter, and that he was assured that he could see his attorney as soon as his counsel arrived.

allegation." The trial record discloses that appellant's counsel did not object to the admission of the confession; and the state court reasoned that no objection was made because the statement contained much exculpatory material which "constituted substantial support for appellant's defense." [6]

■■ Although we agree with the Pennsylvania court's statement of the law that an effective waiver will bar collateral attack, we have some difficulty in reconciling this principle with the record facts of this case.[7] It is true that the transcript in this pre-Jackson v. Denno [8] trial contains no objection by counsel to the introduction of the confession. But the record is equally devoid of any discussion or dialogue from which any conclusion of waiver by the appellant may be convincingly demonstrated.[9]

The Supreme Court has made it clear that for a waiver to be effective, it must be the "considered choice of the petitioner. * * * A choice made by counsel not participated in by the petitioner does not automatically bar relief." Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849 (1963).

■■■ Moreover, the record must convincingly demonstrate a factual background for a finding of waiver, and failing this, an evidentiary hearing is required. Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).

Here there is no testimony upon which to make a proper adjudication of this issue. On the basis of the present record —consisting only of the trial transcript, there having been no post-conviction evidentiary hearings in any of the state or federal proceedings—we are unable to decide whether an effective waiver was made. The record simply does not address itself to this point. Undoubtedly, the record is capable of supporting the hypothesis that no objection was made by counsel for tactical reasons. On the other hand, it is equally capable of supporting the appellant's assertion that he had no part in counsel's decision not to object. This is especially true where, as here, the defense was not provided with a copy of the confession until the moment of its

---

6. 233 A.2d at 533. Pennsylvania practice requires a "contemporaneous objection" at trial to preserve an issue for review. Commonwealth ex rel. Fox v. Maroney, 417 Pa. 308, 207 A.2d 810 (1965); Commonwealth ex rel. Mullenaux v. Myers, 421 Pa. 61, 217 A.2d 730 (1966).

7. The state court's determination of waiver does not, of course, bar an independent determination by the federal courts because "waiver affecting federal rights is a federal question." Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed. 2d 837 (1963).

8. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

9. We are not unmindful that there is formidable authority for the proposition that failure to object to the admission of an allegedly coerced confession in a Pennsylvania court prior to the Supreme Court's decision in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774 (1964) cannot be considered waiver "as a matter of law." Dissenting on other grounds in the second *Gockley* case, Senior Circuit Judge John Biggs, Jr. advances this theory, suggesting that under Pennsylvania's pre-*Jackson* procedures, "an objection to the admissibility of the statements would have been fruitless and perhaps even harmful to [the defendant's] case." U.S. ex rel. Gockley v. Myers, 411 F.2d 216 (3 Cir. 1969). In Smith v. Yeager, 393 U.S. 122, 89 S.Ct. 277, 21 L.Ed.2d 246 (1968), petitioner's counsel, prior to the landmark case of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), which substantially increased the availability of evidentiary hearings in habeas corpus proceedings, stated in open court that he did not think that an evidentiary hearing was necessary. Ruling that this did not constitute a waiver of such a right, the Court said: "Whatever counsel's reasons for this obscure gesture of *noblesse oblige*, we cannot now examine the state of his mind or presume that he intentionally relinquished a known right or privilege, Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461, when the right or privilege was of doubtful existence at the time of the supposed waiver." 393 U.S. at 126, 89 S.Ct. at 279.

offer by the state, affording little time for deliberate reflection.

The existence of possibly conflicting inferences amply demonstrates that the question of waiver is not one which should be resolved by an appellate hypothesis divined from a silent record. To do so is to presume the abandonment of rights; such a presumption flies in the face of what has been called the Supreme Court's abhorrence of technical forfeiture and waiver.[10] The Court has stated in unequivocal terms: "There is a presumption against the waiver of constitutional rights, see e. g., Glasser v. United States, 315 U.S. 60, 70–71, 62 S.Ct. 457, 464–465, 86 L.Ed. 680, and for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.' Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461." Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 1247, 16 L.Ed.2d 314 (1965).

We are quick to recognize that there may be circumstances where the issue of waiver is capable of proper resolution by an examination of the trial record alone. Brookhart v. Janis, *supra*. But this is not such a case; it is one which requires an evidentiary hearing on the threshold question of waiver, such as this court confronted in United States ex rel. Gockley v. Myers, 378 F.2d 398 (3 Cir. 1967). There we remanded a case for further hearing on the question of waiver even though counsel had expressly voiced "no objection" to the introduction of an incriminating statement. We reiterate what we said there:

"We think the issue of waiver must be decided, after opportunity is afforded to the parties to supplement the record on this question if they so desire. And

if the court finds no waiver of constitutional right to challenge the admission of the petitioner's statements it will then be necessary to consider and decide whether due process of law was denied by the use of this evidence against the accused." 378 F.2d at 401.

And to obviate the necessity for additional direction from this court should the district court determine, after hearing, that there was no waiver, we hold that it would be appropriate for the district court to decide whether due process of law was denied by the use of the statements against the accused. See United States ex rel. Gockley v. Myers, 411 F.2d 216 (3 Cir. 1969).[11]

The order of the district court will be vacated and the cause remanded for further proceedings consistent with this opinion.

---

10. Judge Donald P. Lay, Problems of Federal Habeas Corpus Involving State Prisoners, 45 F.R.D. 45, 58 (1968); see U.S. ex rel. O'Connor v. State of New Jersey, 405 F.2d 632, 634; note 2.

11. U.S. ex rel. Gockley v. Myers, 411 F.2d 216 (3 Cir. 1969). In the first *Gockley*

case, *supra*, there was a remand for an evidentiary hearing. In the second appeal, after the district court decided there had been no waiver, we were faced with the determination of whether the ultimate question of voluntariness was for the federal or state courts in the first instance.