In re Ethel **KRAVITZ.**

**Habeas Corpus 635.**

United States District Court,
M. D. Pennsylvania.

June 5, 1979.

---

Harold Cramer, Philadelphia, Pa., for petitioner.

Ronald T. Williamson, Asst. Dist. Atty., Chief, Appellate Div., County of Montgomery, Norristown, Pa., for respondent.

### MEMORANDUM AND ORDER

NEALON, Chief Judge.

Petitioner, Ethel Kravitz, was convicted of the murder of her husband by a jury in Montgomery County, Pennsylvania in 1958. In this habeas corpus proceeding she contends that her Fifth Amendment privilege against self-incrimination was violated when certain inculpatory statements made to the police in the absence of counsel were admitted into evidence at her trial. Presently before the court is respondent's motion to dismiss the habeas corpus petition on the ground of waiver.[1] Respondent bases this motion on the Pennsylvania Supreme Court decision that imposed upon petitioner a procedural default under section 4 of the Pennsylvania Post Conviction Hearing Act[2] for her failure to timely challenge the admissibility of the statements that she now claims were the product of police coercion.[3]

---

1. The concept of "waiver" in the context of habeas corpus actions under 28 U.S.C. § 2254 recognizes that in a federal system such as ours the procedural regimes of the state courts must be accorded due respect. Thus, in appropriate circumstances noncompliance with a state procedural requirement will foreclose or "waive" federal collateral review.

2. Act of January 25, 1966, Pa.Laws (1965) 1580, § 4, Pa.Stat.Ann. tit. 19, § 1180–4 (Purdon Supp.1978) (hereinafter referred to as the PCHA).

3. Petitioner contends, *inter alia*, that this motion should be denied as premature because she intends to amend her petition to include additional claims once she has been granted relief from the 1965 judgment dismissing this petition on exhaustion grounds. These additional issues presumably are those mentioned in my Memorandum of November 2, 1977, *viz.*, (1) deprivation of a fair trial by trial court prejudice and by failure to disclose a friendship between the trial judge and a juror; and (2) the inability to raise these matters in a post-conviction proceeding. It has been more than two months since I granted petitioner's Rule. 60(b) motion. Certainly petitioner's contention that the motion is not ripe is not well taken and cannot support denial of this motion. Furthermore, it may be that an eleventh hour assertion of trial court bias would unfairly prejudice respondent. *See* Rule 9(a) of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C.A. foll. § 2254 (1977). Both the trial judge and the prosecutor are now dead. Thus, it would be difficult for respondent to meet any allegations concerning trial court improprieties or a prejudicial relationship between the judge and a juror.

See *Commonwealth v. Kravitz*, 441 Pa. 79, 85, 269 A.2d 912 (1970). This holding, argues respondent, constitutes both an "adequate and independent" state procedural ground, and a finding, to which this court should defer, that petitioner did not have "cause" for her failure to timely raise the voluntariness issue and did not suffer "actual prejudice" as a result of such failure. Respondent asserts that under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), petitioner has thus "waived" her right to seek federal habeas relief.

In rebuttal, petitioner contends that the waiver ruling of the Pennsylvania Supreme Court rested upon a statutory presumption and, therefore, cannot be treated by this court as a conclusive factual finding that petitioner's failure to raise the issue at her trial or on direct appeal was without cause.[4] Petitioner states that if given the opportunity she will establish cause for her failure to timely raise the issue and will also show actual prejudice resulting from the admission into evidence of statements made to police officers.

The parties' respective arguments focus on the question of what weight should be accorded the finding of waiver by the state's highest appellate court. By isolating on this issue the parties have not addressed a number of federal waiver-related problems spawned simply by developments in federal and Pennsylvania law since petition-er's conviction in 1958. These problems may for analytical purposes be grouped into two categories: (1) those that concern the adequacy of the procedural ground on which the Pennsylvania Supreme Court based its decision not to consider the merits of petitioner's voluntariness claim;[5] and (2) those that deal with the proper standard— "deliberate bypass," *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), or "cause and prejudice," *Wainwright v. Sykes, supra,*—by which to determine whether an adequate nonfederal ground foreclosing state court review of the merits of the federal claim also precludes federal habeas review.[6]

■ These are weighty issues that should not be considered without the benefit of the parties' respective views. Allowance for time to submit briefs now, however, would only needlessly delay the resolution of this already protracted litigation. I believe that the present record is sufficiently developed to rule that the state waiver decision is not determinative in a federal habeas proceeding on either the question of deliberate bypass of an available state corrective process or of cause for, and prejudice resulting from, a state procedural default. Thus, were I to find that the state court's refusal to entertain the merits of petitioner's claim rested upon an adequate procedural ground, a determination of deliberate bypass or cause and prejudice would still have to be

4. Petitioner also argues that respondent's failure to raise the waiver question when afforded the opportunity to do so by this court constitutes an estoppel justifying denial of the motion. There is some question as to whether respondent could effectively waive this issue by not raising it in a timely manner. *Cf. United States ex rel. Trantino v. Hatrack*, 563 F.2d 86, 98 (3d Cir. 1977), *cert. denied*, 435 U.S. 928, 98 S.Ct. 1499, 55 L.Ed.2d 524 (1978); *Zicarelli v. Gray*, 543 F.2d 466, 471 (3d Cir. 1976) (en banc) (state may not "waive" exhaustion requirement). I need not decide whether respondent could waive this question because I believe that respondent's motion, which was filed prior to the reopening of this action, is timely.

5. Of central importance in determining the adequacy of the state procedural default is ascertaining what procedural forfeiture provisions existed at the time of petitioner's trial.

Did Pennsylvania have a "contemporaneous objection" rule at that time? Was the voluntariness issue interjected into the trial in some fashion? Did failure to challenge the voluntariness of inculpatory statements at the time of petitioner's trial bar a subsequent collateral challenge to such statements?

6. In order to ascertain the proper standard by which federal waiver is to be determined it is necessary to find *when* the state procedural default occurred. Did the forfeiture arise as a result of the failure of petitioner's counsel to object at trial or to raise the voluntariness issue on appeal? Furthermore, if it is determined that the cause and prejudice standard is applicable, a decision must be made on what constitutes "cause" and how "prejudice" is measured.

made and this finding could not be made in the context of this case without an evidentiary hearing. *Cf. Humphrey v. Cady*, 405 U.S. 504, 517, 92 S.Ct. 1048, 1056, 31 L.Ed.2d 394 (1972).

It would appear that the interests of justice and economy of judicial resources would best be served by combining a federal "waiver" hearing with a hearing on the merits of petitioner's voluntariness claim.[7] *See Opie v. Meacham*, 419 F.2d 465, 466 (10th Cir. 1969), *cert. denied*, 399 U.S. 927, 90 S.Ct. 2239, 26 L.Ed.2d 793 (1970); Meyer and Yackle, *Collateral Challenges to Criminal Convictions*, 21 Kan.L.Rev. 259, 291–94 (1973). Accordingly, a joint hearing on the issue of waiver and the merits of petitioner's claim will be conducted. At the conclusion of this hearing a briefing schedule will be established for the parties to address the waiver-related issues identified in this memorandum as well as the merits of petitioner's substantive claim.

## II.

Petitioner's husband was found dead in the marital bedroom of their home in Wynnewood, Pennsylvania, late in the afternoon of Independence Day, 1958. He had been shot several times and had been bludgeoned about the head and face. There were no witnesses to the slaying and no one has yet admitted criminal culpability. Certain circumstantial evidence, however, appears to inculpate petitioner.[8] Among this evidence were statements purportedly made by petitioner to law enforcement agents during an in-custody interrogation.[9] It is the admissibility of these statements that is assailed by petitioner in her claim here.

Petitioner contends that the statements were the product of police coercion. She alleges lengthy interrogation (from about 5 P.M. on the day of the murder to about 4 A.M. the next morning), intimidation by a police officer and two actual batteries, including one instance where she was allegedly struck across the face.

No objections to the admissibility of her incriminating statements were ever made at trial, nor does it appear that the voluntariness of these statements was questioned in her post-trial motions and direct appeal to the Pennsylvania Supreme Court.[10] It appears that this issue was first raised when petitioner instituted the instant habeas corpus action in 1965. While the admission of the challenged statements caused our Court of Appeals some concern, it affirmed Judge Follmer's dismissal of this claim on the ground that the PCHA seemed to offer a state judicial forum for its adjudication. *See In re Kravitz*, 358 F.2d 734, 735 (3d Cir. 1966) (per curiam).

Petitioner's subsequent bid to seek state judicial review of the merits of her

---

**7.** It is now more than twenty years since petitioner's conviction. A 1977 investigation conducted by a Montgomery County detective revealed that most of the principals involved in the interrogation of petitioner were then still available. (The results of the detective's inquiry are summarized in my Memorandum of November 2, 1977 at 6–7.) These individuals may become unavailable, however, with the passage of additional time. To postpone a hearing on the merits until after I decide the waiver question would needlessly chance the loss of the testimony of these key witnesses. Since a record on petitioner's involuntariness claims has never been developed it would appear to be in the interests of all parties that this testimony be memorialized before it is lost.

**8.** For a review of this circumstantial evidence see *Commonwealth v. Kravitz*, 400 Pa. 198, 200 16, 161 A.2d 861 (1960), *cert. denied*, 365 U.S. 846, 81 S.Ct. 807, 5 L.Ed.2d 811 (1961).

**9.** Chief County Detective Charles G. Moody testified at petitioner's trial that she had admitted wearing certain blood-splattered clothing on the day her husband was found dead and that she had made contradictory statements regarding the route she had taken to the home of her husband's brother-in-law, Morris Passon, on the day of the murder. The alleged murder weapon was found in a culvert along Morris Road, one of the routes Detective Moody said that petitioner had indicated as the one she took to the Passon home.

**10.** In her later PCHA action petitioner apparently alleged that her trial attorneys were unaware of the means by which these statements were extracted. *See Commonwealth v. Kravitz*, 441 Pa. 79, 89, 269 A.2d 912 (1970) (Roberts, J., dissenting).

claim was rejected without a hearing on the ground that she had "waived" this claim under section 4 of the PCHA.[11] Applying the statutory presumption that a failure to raise a claim "is a knowing and understanding failure,"[12] section 4(c) of the PCHA, Pa.Stat.Ann. tit. 19, § 1180–4(c) (Purdon Supp.1978), and citing a Pennsylvania case which held, *inter alia*, that "absent a showing of incompetency or the presence of exceptional circumstances, counsel's decision not to attack the confession binds his client," *Commonwealth v. Snyder*, 427 Pa. 83, 93, 233 A.2d 530, 536 (1967), the Pennsylvania Supreme Court ruled that petitioner's

"failure to raise this issue previously at her trial *or* on appeal to this Court was knowing and understanding."[13] *Commonwealth v. Kravitz*, 441 Pa. 79, 85, 269 A.2d 912, 915 (1970).

In 1977, petitioner filed a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure in this court for relief from the 1965 judgment dismissing the voluntariness claim for failure to exhaust state judicial remedies.[14] Specifically, petitioner sought to add to the Order of August 25, 1965, "express language retaining jurisdiction pending determination by the state courts of the constitutional issues presented to, but

11. The PCHA bars review of those claims that have either been "finally litigated" or "waived." Section 3(d) of the PCHA, Pa.Stat.Ann. tit. 19, § 1180–3(d) (Purdon Supp.1978). An issue is "waived" for purposes of the PCHA if the state prisoner "knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under [the] act" and there is an absence of extraordinary circumstances to justify the failure to raise the matter. Section 4(b) of the PCHA, Pa.Stat.Ann. tit. 19, § 1180–4(b) (Purdon Supp.1978). Under Pennsylvania law, a failure to raise an issue in a proceeding in which the accused is competently represented by counsel is *presumed* to be a knowing and understanding decision. *See* section 4(c) of the PCHA, Pa.Stat.Ann. tit. 19, § 1180–4(c) (Purdon Supp.1978); *Commonwealth v. Felder*, 246 Pa.Super. 324, 334 n.8, 370 A.2d 1214 (1976).

12. Two years after dismissing petitioner's PCHA application the Pennsylvania Supreme Court ruled that the waiver provisions of the PCHA do not apply to bar review of claims of constitutional deprivations where, as in petitioner's case, the failure to raise the claim occurred in a direct appeal filed prior to March 1, 1966, the effective day of the PCHA. *See Commonwealth v. Melton*, 449 Pa. 223, 226–27, 296 A.2d 727 (1972). Thus, it would appear that the ruling that she "waived" the voluntariness issue under the PCHA was erroneous. That is not to say, however, that the Pennsylvania courts would have reached the merits of petitioner's claim. *See Commonwealth v. Schmidt*, 452 Pa. 185, 208, 299 A.2d 254 (1973).

13. The precise basis for the Pennsylvania Supreme Court's finding of waiver, i. e., whether it was the result of her attorney's failure to object at trial or his failure to raise the voluntariness issue on appeal, is unclear. At one

point the state court notes that the failure to raise the issue on her direct appeal effected the waiver. *Commonwealth v. Kravitz, supra*, 441 Pa. at 84, 269 A.2d 912. As noted in the text, the court also stated that the failure to raise the issue at trial *or* on appeal established the PCHA waiver. When the procedural default occurred is of especial importance in ascertaining the standard by which to determine whether petitioner is foreclosed from seeking federal habeas relief. In my Memorandum of August 2, 1979, I observed that the state waiver occurred when petitioner failed to raise the matter on direct appeal and that the deliberate bypass standard of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), was, therefore, applicable in deciding whether the state procedural default should bar federal habeas review. I still believe that if she could have raised the issue on direct appeal notwithstanding her failure to object at trial deliberate bypass would be the appropriate standard. *See Ferguson v. Boyd*, 566 F.2d 873, 879 (4th Cir. 1977). *But see Frazier v. Czarnetsky*, 22 Crim. L.Rep. (BNA) 2269 (S.D.N.Y.1977). If, however, her failure to object at trial precluded raising the voluntariness issue on direct appeal, then it appears that the cause and prejudice standard of *Sykes* would apply. The question of when the procedural default occurred has not been addressed by the parties.

14. This motion was filed after petitioner had unsuccessfully sought an executive pardon, habeas corpus relief, and a declaratory judgment under the Civil Rights Act, 42 U.S.C. § 1983, that her conviction was "null and void." In an opinion dissenting from the affirmance of the dismissal of the habeas corpus and civil rights actions filed in the Eastern District of Pennsylvania, Circuit Judge Gibbons suggested Rule 60 as a means of reopening the 1965 judgment in this habeas corpus action. *See Kravitz v. Commonwealth*, 546 F.2d 1100, 1104–05 (3d Cir. 1977) (Gibbons, J., dissenting).

undecided by, this Court . . . ." This motion was denied by order dated June 16, 1977, with leave to file a new motion under Rule 60(b). Petitioner subsequently filed a motion under Rule 60(b)(6), which was granted by order dated November 2, 1977. Respondent then moved to dismiss the petition for lack of jurisdiction on the grounds that petitioner was no longer in custody and that inasmuch as the 1965 order was final and the 10-day limit for relief under Rules 52 and 59 had long since passed Rule 60(b) relief was no longer available. By order dated August 2, 1978, respondent's motion was denied. The August 2nd order also vacated the order of November 2, 1977 reopening this case and scheduled a hearing on the question of the reasonableness for the delay in filing the Rule 60 motion. After reviewing the testimony and evidence offered at this hearing I concluded that the delay was not unreasonable and granted petitioner's motion for relief from judgment. Order of March 7, 1979. Respondent's instant motion to dismiss on the ground of waiver became ripe on March 5, 1979.

### III.

Federal review of a state conviction is a delicate and serious responsibility, especially where, as here, state court consideration of the claim raised by the habeas petitioner is foreclosed by procedural strictures. Proper respect must be given the state's interests in maintaining the integrity of its procedural rules, securing finality of criminal judgments, and obtaining efficient use of state judicial resources. Competing against the state's interests in finality and efficiency are the individual's interest in having some court adjudicate his claim and the societal interest in the protection of fundamental rights. *See* Brennan, *Federal Habeas Corpus and State Prisoners: An Exercise in Federalism*, 7 Utah L.Rev. 423, 425 (1961).

Our Supreme Court has announced two rules—the "deliberate bypass" and "cause and prejudice" rules—that attempt to balance these competing interests. Applica-

tion of the individual standard as the appropriate guide for the exercise of the federal court's discretion to impose a federal "waiver" is triggered by the type of procedural default that has occurred. The effect of noncompliance with procedural rules governing pretrial and trial proceedings is now generally determined by the cause and prejudice formula. A posttrial or appellate procedural forfeiture is subject to the deliberate bypass test.

Both rules acknowledge the *power* of the federal court to entertain an application for a writ of habeas corpus notwithstanding a state procedural default, *see, e. g., Wainwright v. Sykes, supra,* 433 U.S. at 96 n. 4, 97 S.Ct. at 2511 n. 4 (Stevens, J., concurring); *Francis v. Henderson,* 425 U.S. 536, 538, 96 S.Ct. 1708, 1709, 48 L.Ed.2d 149 (1976); Tushnet, *More Disquiet in the Citadel: A Note on Lefkowitz v. Newsome,* 26 Syracuse L.Rev. 1227, 1234 (1975), but recognize that noncompliance with a state procedural requirement may cause a "waiver" of the petitioner's right to seek federal habeas relief. At issue here is whether the failure of petitioner's counsel to object at trial or raise the voluntariness issue on appeal effected such a waiver. Changes in federal and Pennsylvania law have complicated this question. To put the matter in proper perspective it is necessary to briefly trace the pertinent legal developments.

### A.

At the time of petitioner's conviction in 1958 a state court refusal to consider the merits of a claimed constitutional violation barred federal habeas review if such refusal rested upon "an *adequate* state [procedural] ground . . . ." *Brown v. Allen,* 344 U.S. 443, 458, 73 S.Ct. 397, 458, 97 L.Ed. 469 (1953) (emphasis supplied). If the state procedural rule furthered legitimate state interests it was an "adequate" nonfederal ground and thus dispositive of the case. *Cf. Henry v. Mississippi,* 379 U.S. 443, 447, 85 S.Ct. 564, 567, 13 L.Ed.2d 408 (1965).

The jurisdictional import of the "adequate state procedural ground" rule was reconsidered in *Fay v. Noia,* 372 U.S. 391,

83 S.Ct. 822, 9 L.Ed.2d 837 (1963). After reviewing the development of the federal writ of habeas corpus the Court concluded that there was no historical foundation for a rule restraining federal habeas jurisdiction on the basis of a state procedural default. "[F]ederal court jurisdiction," the Court announced, "is conferred by the allegation of an unconstitutional restraint and is not defeated by anything that may occur in the state court proceedings." *Id.* at 426, 83 S.Ct. at 842. Thus, the "adequate state procedural ground" standard was discarded. This jurisdictional bar was replaced by a rule that afforded the habeas court limited discretion to deny relief where state corrective processes had been deliberately bypassed. *Id.* at 438, 83 S.Ct. at 848. The "controlling standard" of deliberate bypass is "[t]he classic definition of waiver enunciated in *Johnson v. Zerbst,* 304 U.S. 458, 464, [58 S.Ct. 1019, 1023, 82 L.Ed. 1461]—'an intentional relinquishment or abandonment of a known right or privilege' . . . ." *Id.* at 439, 83 S.Ct. at 849.

While *Fay* was decided in the context of a failure to take a timely appeal its deliberate bypass rule was subsequently extended to consider the effect of procedural forfeitures occurring at or prior to trial. *See, e. g., United States ex rel. Macon v. Yeager,* 476 F.2d 613, 614–15 n. 2 (3d Cir.), *cert. denied,* 414 U.S. 855, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973); *Murray v. Wainwright,* 450 F.2d 465, 469–70 (5th Cir. 1971). In *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), however, the Court rejected the applicability of the deliberate bypass standard to a failure to timely challenge the composition of a Louisiana grand jury that had indicted the habeas applicant. Instead, the Court applied the

"cause and prejudice" rule announced in *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973),[15] and concluded that the petitioner had waived his right to seek federal habeas relief.

The cause and prejudice formula was subsequently extended to procedural defaults occurring at trial. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The *Sykes* analysis, which focused on the failure of petitioner's counsel to timely object to the admission of certain inculpatory statements allegedly obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is particularly instructive here.

The broad issue confronting the Court in *Sykes* was identified as "[i]n what instances will an adequate and independent state ground bar consideration of otherwise cognizable federal issues on federal habeas review." *Id.* at 78–79, 97 S.Ct. at 2502. To answer this question the Court examined the Florida "contemporaneous objection" rule and concluded that it required the admissibility of a confession to be challenged at trial or not at all. *Id.* at 86–87, 97 S.Ct. at 2506. Since such a procedural rule furthers legitimate state interests, *see Henry v. Mississippi, supra,* 379 U.S. at 448, 85 S.Ct. at 567, the Court concluded that the failure of Sykes' attorney to raise a timely objection "amounted to an independent and adequate state procedural ground . . ." *Id.* at 87, 97 S.Ct. at 2506. The Court, while recognizing the previous applicability of *Fay* to a procedural default occurring at trial, extended the rule of *Francis* as the guiding standard for the exercise of discretion to deny relief on the basis of a trial procedural forfeiture.[16] Without defining the content or scope of the cause and preju-

---

**15.** The Court had held in *Davis* that absent a showing of cause for and prejudice resulting from a failure to timely object to the composition of a grand jury in compliance with Rule 12(b)(2) of the Federal Rules of Criminal Procedure a grand jury discrimination claim is not cognizable in a collateral proceeding under 28 U.S.C. § 2255.

**16.** The Court emphasized the non-jurisdictional nature of the rule:

> The 'cause' and 'prejudice' exception of the *Francis* rule will afford an adequate guarantee, we think, that the rule will not prevent a federal habeas court from adjudicating for the first time the federal constitutional claim of a defendant who in the absence of such an adjudication will be the victim of a miscarriage of justice.

*Id.* at 90–91, 97 S.Ct. at 2508.

dice rule, the Court found that Sykes had failed to establish cause for his counsel's failure to make a timely objection and had not suffered actual prejudice as a result of the admission of the inculpatory statements.[17] *Id.* at 91, 97 S.Ct. at 2508.

Employing here the approach utilized in *Sykes*, the threshold question is whether the state court refusal to consider the merits of petitioner's voluntariness claim rests upon an adequate state procedural ground; if the refusal does not rest upon an adequate non-federal ground then this court is not precluded from entertaining petitioner's application for a writ of habeas corpus. If an adequate procedural ground does support the state supreme court's decision, then the precise point at which the procedural default occurred must be determined. If the forfeiture occurred at trial, federal waiver must be considered under the cause and prejudice rule; if the forfeiture occurred because of the failure to raise this issue on appeal, the deliberate bypass standard must be applied.

### B.

The inquiry into whether the Pennsylvania Supreme Court's decision not to reach the merits of petitioner's voluntariness claim rests upon an adequate state ground involves a two step process. First, it must be ascertained whether Pennsylvania had a rule in 1958 that precluded either appellate or collateral review for failure to timely raise an issue. And second, if a procedural default rule applicable to the facts of this case did exist, it must be determined whether that rule constituted an "adequate" state ground.

■ The adequacy of a state procedural ground is a federal question. *See Henry v. Mississippi, supra,* 379 U.S. at 447, 85 S.Ct. at 567; *Staub v. City of Baxley,* 355 U.S. 313, 318, 78 S.Ct. 277, 280, 2 L.Ed.2d 302 (1958). The test is whether "the state's insistence on compliance with its procedural rule serves a legitimate state interest." *Henry v. Mississippi, supra,* 379 U.S. at 447, 85 S.Ct. at 567. *See also Wainwright v. Sykes, supra,* 433 U.S. at 83 n. 8, 97 S.Ct. at 2504 n. 8. Indiscriminate application of the procedural bar is also generally required. *See, e. g., NAACP v. Alabama,* 377 U.S. 288, 301, 84 S.Ct. 1302, 1310, 12 L.Ed.2d 325 (1964). As the Court in *Williams v. Georgia,* 349 U.S. 375, 383, 75 S.Ct. 814, 819, 99 L.Ed. 116 (1955), explained:

[W]here a state allows questions of this sort to be raised at a late stage and be determined by its courts as a matter of discretion, we are not concluded from assuming jurisdiction and deciding whether the state court action in the particular circumstances is, in effect, an avoidance of the federal right. A state court may not, in the exercise of its discretion, decline to entertain a constitutional claim while passing upon kindred issues in the same manner.

**17.** The Court limited the applicability of the cause and prejudice rule to the facts confronting it and reserved for future decisions the task of defining "cause" and "prejudice":

We leave open for resolution in future decisions the precise definition of the "cause"-and-"prejudice" standard, and note here only that it is narrower than the standard set forth in dicta in *Fay v. Noia, supra,* which would make federal habeas review generally available to state convicts absent a knowing and deliberate waiver of the federal constitutional contention. It is the sweeping language of *Fay v. Noia,* [*supra,*] going far beyond the facts of the case eliciting it, which we today reject.[12]

[12] We have no occasion today to consider the *Fay* rule as applied to the facts there confronting the Court. Whether the *Francis* rule should preclude federal habeas review of

claims not made in accordance with state procedure where the criminal defendant has surrendered, other than for reasons of tactical advantage, the right to have all of his claims of trial error considered by a state appellate court, we leave for another day.

The Court in *Fay* stated its knowing-and-deliberate-waiver rule in language which applied not only to the waiver of the right to appeal, but to failures to raise individual substantive objections in the state trial. Then, with a single sentence in a footnote, the Court swept aside all decisions of this Court "to the extent that [they] may be read to suggest a standard of discretion in federal habeas corpus proceedings different from what we lay down today . . . ." 372 U.S. 391, at 439 n. 44 [83 S.Ct. 822, at 849 n. 44]. We do not choose to paint with a similarly broad brush here.

In addition to examining the interests served by a procedural default rule and the relative inflexibility of its application it may also be necessary to consider whether retroactive imposition of such a rule should be accorded deference by this court. It is clear that since *Commonwealth ex rel. Fox v. Maroney*, 417 Pa. 308, 207 A.2d 810 (1965), Pennsylvania has applied a contemporaneous objection rule to bar collateral review of a claim.[18] For example, in *Commonwealth v. Schmidt*, 452 Pa. 185, 207, 299 A.2d 254 (1973) (decision of the court), the court ruled that while the PCHA waiver provisions were inapplicable to a proceeding instituted prior to the Act's effective date, failure to raise an illegal arrest contention foreclosed collateral review. Thus, while application of the PCHA waiver provisions in petitioner's case was in error,[19] state collateral review of petitioner's voluntariness claim would nonetheless be foreclosed by her attorney's failure to object at trial. If such a procedural default rule did not in fact exist until 1965 then the propriety of imposing a procedural forfeiture not in operation at the time the default actually occurred must be considered.

This analysis, though necessarily based in part upon hypothesis, points out the importance of establishing with some precision the relevant procedural requirements in effect in Pennsylvania at the time of petitioner's conviction. This determination bears not only on the adequacy of the state ground for declining review on the merits of the voluntariness issue but also on the standard to be applied in ascertaining whether an adequate state procedural ground also bars habeas relief.

## C.

■ The parties have assumed that the question of federal waiver is governed by the cause and prejudice standard, which is "narrower" than the deliberate bypass test. *See Wainwright v. Sykes, supra,* 433 U.S. at 87, 97 S.Ct. at 2506. Thus, if petitioner can satisfy the cause and prejudice rule then, *a fortiori*, the deliberate bypass test is met.[20] But development of a complete record requires that the basis for applying the *correct* waiver standard be established. The burden is on respondent to come forward with information to indicate when the state procedural default occurred—at trial or on appeal.

Assuming *arguendo* that the cause and prejudice standard provides the appropriate guidance for a waiver decision, this court must face the largely unresolved problems of what constitutes "cause" for a procedural default and "actual prejudice" resulting therefrom. Again, neither party has addressed this matter. An examination of the pertinent case law reveals that the federal courts are not in complete accord as to the content to be given "this cryptic new test." *Cole v. Stevenson,* 447 F.Supp. 1268, 1271 (E.D.N.C.1978).

Some courts have held that incompetence of trial counsel would satisfy the "cause" prong of the test. *E. g., Sincox v. United States,* 571 F.2d 876, 880 (5th Cir. 1978); *Cole v. Stevenson, supra,* 447 F.Supp. at 1272. *But see Ramsey v. United States,* 448 F.Supp. 1264, 1272–73 (N.D.Ill.1978). Others have ruled that counsel's unawareness of the facts or law underlying the habeas

---

**18.** My reading of *Commonwealth v. Snyder*, 427 Pa. 83, 233 A.2d 530 (1967), a case cited by respondent for the proposition that there was a contemporaneous objection rule at the time of petitioner's trial, leads me to question whether in fact a failure to object barred collateral review in 1958. It is apparent that at least in some instances collateral attacks on the voluntariness of a confession were entertained prior to 1965 despite the lack of a timely objection at the trial. *E. g., Commonwealth ex rel. Sheeler v. Burke,* 367 Pa. 152, 79 A.2d 654 (1951). Moreover, the court in *Snyder* specifically stated that "[b]eginning with *Commonwealth ex*

*rel. Fox v. Maroney . . . this Court has consistently held that failure to raise at trial the issue of voluntariness precludes later, collateral attempts challenging the voluntariness of the accused's confession." Snyder, supra,* 427 Pa. at 88, 233 A.2d at 533. (emphasis added)

**19.** *See* note 10 *supra.*

**20.** This reasoning assumes, of course, that the same justifications support the failure to raise the voluntariness claim both at trial and on appeal.

applicant's claim would be sufficient cause for failure to timely raise the matter in the state courts. *E. g., Collins v. Auger,* 577 F.2d 1107, 1110 n. 2 (8th Cir. 1978), *cert. denied,* 439 U.S. 1133, 99 S.Ct. 1057 (1979). *Cf. Graham v. Maryland,* 454 F.Supp. 643, 648 (D.Md.1978) ("cause" means a reasonable and valid explanation other than a tactical decision to forego the available avenue of redress).

In considering the second prong of the test some courts appear to have adopted a *per se* rule that abrogation of a "fundamental" right constitutes prejudice. *E. g., Sincox v. United States, supra,* 571 F.2d at 879; *Jiminez v. Estelle,* 557 F.2d 506, 510 (5th Cir. 1977); *Graham v. Maryland, supra,* 454 F.Supp. at 648–49. In the context of a challenge to the admissibility of inculpatory statements the Court of Appeals for the Eighth Circuit suggested the "harmless error" test and the standard set out in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), for determining the materiality of exculpatory evidence that the prosecution had failed to disclose as possible guides for the prejudice requirement. *Collins v. Auger, supra,* 577 F.2d at 1110.

The varying constructions given the terms "cause" and "prejudice" reveal the difficult and substantial problem of determining the parameters of this new test of federal waiver. I intimate no view at this time as to what I believe to be the proper standards by which to ascertain cause and prejudice. It is sufficient to note that the present record does not afford a basis for determining whether there was cause for the state procedural default.[21] That determination cannot be made until after a hearing has been held at which petitioner will have the opportunity to explain her failure to timely challenge the admissibility of the inculpatory statements.

## IV.

Respondent argues, however, that a hearing on the question of waiver is unnecessary because the Pennsylvania Supreme Court has already found that petitioner deliberately bypassed available state remedies and, since the *Sykes* standard is narrower than the deliberate bypass rule, petitioner cannot surmount the cause and prejudice test. Three reasons compel rejection of this argument.

■ First, waiver of the right to seek federal habeas relief under either the deliberate bypass or cause and prejudice rule is a federal question to be judged by federal standards. Thus, "[t]he state court's determination of waiver does not . . . bar an independent determination by the federal courts . . . ." *United States ex rel. Snyder v. Mazurkiewicz,* 413 F.2d 500, 502 n. 7 (3d Cir. 1969). *Accord, Rinehart v. Brewer,* 561 F.2d 126, 129 (8th Cir. 1977); *United States ex rel. Montgomery v. Brierley,* 414 F.2d 552, 560 (3d Cir. 1969), *cert. denied,* 399 U.S. 912, 90 S.Ct. 2206, 26 L.Ed.2d 566 (1970). *Cf. Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

■ Second, while the state court announced that its waiver doctrine is identical with the deliberate bypass rule, it would appear that there are important distinctions between the two and that the court's ruling in petitioner's case that she had waived her PCHA remedy is not equivalent to a finding of " 'an intentional relinquishment or abandonment of a known right or privilege.' " *Fay v. Noia, supra,* 372 U.S. at 439, 83 S.Ct. at 849. The primary distinction between the two standards is the presumption under Pennsylvania law that a failure to timely raise an issue is a knowing and understanding failure. *See* section 4(c) of the PCHA, Pa.Stat.Ann. tit. 19, § 1180–4(c) (Purdon Supp.1978); *Commonwealth v. Felder,* 246 Pa.Super. 324, 334 n. 8, 370 A.2d 1214 n. 8 (1976). In practice, this presumption imputes to a state prisoner a knowing and understanding failure to raise an issue in every proceeding in which he has received "effective" assistance of counsel.

---

**21.** I believe that it would be improvident to consider whether petitioner suffered actual prejudice from the admission of the contested statements when the parties have not addressed the question of how to determine prejudice.

See, e. g., Commonwealth v. Bennett, 472 Pa. 314, 372 A.2d 713 (1977); Commonwealth v. Valezquez, 244 Pa.Super. 327, 368 A.2d 745 (1976). Compare United States ex rel. Johnson v. Cavell, 468 F.2d 304, 308 (3d Cir. 1972). There is no presumption in favor of waiver under the deliberate bypass test. See United States ex rel. Linde v. Brierley, 437 F.2d 324, 326 n. 12 (3d Cir. 1970). On the contrary, "every presumption against waiver is to be indulged." Id. (emphasis added). Accord, United States ex rel. Turner v. Rundle, 438 F.2d 839, 843 (3d Cir. 1971). Since the statutory presumption was relied upon to find a waiver in petitioner's case I do not believe that the state supreme court's decision can be treated as a finding of deliberate bypass under Fay.

■ Finally, "the record must convincingly demonstrate a factual background for a finding of waiver, and failing this, an evidentiary hearing is required." United States ex rel. Snyder v. Mazurkiewicz, supra, 413 F.2d at 502. Accord, Humphrey v. Cady, 405 U.S. 504, 517, 92 S.Ct. 1048, 1056, 31 L.Ed.2d 394 (1972); United States ex rel. Turner v. Rundle, supra, 438 F.2d at 843; United States ex rel. Montgomery v. Brierley, supra, 414 F.2d at 560. As the court stated in Snyder, supra, 413 F.2d at 503, "the question of waiver is not one which should be resolved by an appellate hypothesis divined from a silent record." There was no evidentiary hearing on the question of waiver in the state courts and I do not believe that the record "convincingly demonstrates" a factual basis for waiver. Certainly, there is nothing in the record to suggest a tactical advantage to be gained by not timely raising the voluntariness claim in the state courts.[22] Accordingly, the court's waiver ruling cannot be considered a definitive finding of deliberate bypass under Fay and does not militate for a finding in respondent's favor.

### V.

In sum, I believe that petitioner must at most demonstrate cause for, and prejudice resulting from, her failure to timely raise the voluntariness issue. This determination cannot be made on the basis of the present record and a hearing on the question of waiver will be held. In the interests of justice and efficient use of judicial resources this hearing will be combined with a hearing on the merits of the voluntariness issue. At the conclusion of this hearing a briefing schedule will be established for the parties to address the unresolved waiver related issues identified in this memorandum as well as the merits of petitioner's substantive claim.

---

22. It should be noted that "there is formidable authority for the proposition that failure to object to the admission of an allegedly coerced confession in a Pennsylvania court prior to the Supreme Court's decision in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774 [12 L.Ed.2d 908] (1964) cannot be considered waiver 'as a matter of law.'" United States ex rel. Snyder v. Mazurkiewicz, supra, 413 F.2d at 502 n. 9. Pennsylvania's procedure at the time of petitioner's trial for determining the voluntariness of inculpatory statements was similar to that proscribed in Jackson. See United States ex rel. Gockley v. Myers, 411 F.2d 216, 221 (3d Cir. 1969) (Biggs, J., dissenting). Under that procedure unless a confession was clearly coerced the question of voluntariness was submitted to the jury that determined the accused's guilt or innocence. Thus, at the time of petitioner's conviction an objection to the admissibility of the statements may have been fruitless and harmful to her case. See United States ex rel. Gockley v. Myers, 276 F.Supp. 748, 752 (E.D.Pa.1967), rev'd on other grounds, 411 F.2d 216 (3d Cir. 1969). In short, at the time of petitioner's conviction there may not have been an effective remedy by which to determine the admissibility of the statements challenged here.